UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

   v.            CASE NO. 8:18-cr-20-T-33MAP

NIXON BOLIVAR RIVERA FLORES,
JESUS ANDRES MEZA ORTIZ, and
TONNI MICHAEL LAJE HURTADO

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America submits this memorandum in response to defendants Nixon Bolivar Rivera Flores, and Jesus Andres Meza Ortiz's contentions, which they make through objections to the U.S. Sentencing Guidelines calculation in each of their respective Presentence Investigation Report ("PSR"), that they merit a minor role reduction under USSG § 3B1.2 and the additional offense level reductions arising from a minor role reduction.

### I.   BACKGROUND

#### A.   Factual Background

On December 8, 2017 while on routine patrol in the Eastern Pacific Ocean, a Maritime Patrol Aircraft ("MPA") spotted a Panga vessel approximately 636 Nautical Miles South West of Port Angel/ Huatulco, Mexico. The vessel was reported to be approximately 35 feet in length with a

blue hull. The U.S. Coast Guard Cutter STEADFAST ("STE") was less than a mile away and moved to intercept.

STE arrived on scene and launched their Over-The-Horizon-Vessel ("OTH") with a boarding team. As the OTH vessel gained visual, it reported two vessels side by side each other. Both vessels attempted to flee. The OTH vessel followed one of the GFV for approximately five minutes, before the GFV began taking on water.

D 11 granted permission to embark the vessel to recover the crew and preserve evidence. The OTH vessel was able to transfer the crew and one bale of suspected contraband onto the OTH vessel. The OTH vessel then left the sinking GFV and tried to intercept the second GFV. While following the second GFV, the OTH vessel came across and marked a bale field. The bale field was approximately 700 yards from the first GFV. The OTH continued towards the second GFV, before severe thunderstorms ended the pursuit. The second GFV was able to flee.

The boarding team conducted two NIK tests on the bale pulled from the first GFV, both of which were positive for cocaine. The OTH team returned to the first vessel and began to dewater the GFV to improve its stability. The vessel had no indicia of nationality and no claim of nationality was made by the master.

The boarding team seized 29 bales — weighing approximately 1191 Kilograms — from on board the GFV and approximately 18 additional bales from the jettisoned fields, weighing approximately 737 kilograms. Two additional NIK testes were done on bales recovered from the jettisoned fields, both were positive for cocaine. The bales from the jettison field were wrapped in the same material and tied with the same type of cord as the bales found on board the GFV.

A final laboratory report from the DEA lab in Vista, California, estimates the bricks' total net weight as 1467 kilograms, plus or minus five kilogram, with a 95% confidence level.

B.  Procedural Background

On January 9, 2018, the Defendants were named in a two-count indictment charging them with conspiracy and possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, while aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(a). Doc. 1.

Nixon Bolivar Rivera Flores and Jesus Andres Meza Ortiz pleaded guilty to Count One pursuant to a plea agreement on March 29, 2018. Doc. 34. Tonni Michael Laje Hurtado pleaded guilty to Count One pursuant to a plea agreement on April 16, 2018. Doc. 46

On May 9, 2018, Probation Officer Cynthia Gornbein filed Nixon Bolivar Rivera Flores' initial PSR. Doc 52. Ms. Gornbein then filed Flores's final PSR on May 24, 2018. Doc 57. Flores lodged two objections to the PSR. First, that he was not the captain and therefore does not warrant a two-level increase, and second, that Probation Officer Gornbein did not include a two-level minor role reduction under USSG § 3B1.2.

On May 4, 2018, Probation Officer Cynthia Gornbein filed Jesus Andres Meza Ortiz's initial PSR. Doc 51. Ms. Gornbein then filed Ortiz's final PSR on June 19, 2018. Doc 65. Meza Ortiz lodged one objection to the PSR. Similar to Flores, Meza Ortiz objects to Probation Officer Gornbein not including a two-level minor role reduction under USSG § 3B1.2.

On May 7, 2018, Probation Officer Cynthia Gornbein filed Tonni Laje Hurtado's initial PSR. Doc 53. Ms. Gornbein then filed Hurtado's final PSR on June 19, 2018. Doc 63. Hurtado filed no objections to the PSR, but in his sentencing memorandum, makes the same minor role objections made by Flores and Ortiz. Doc 67.

The United States, in agreement with Probation Officer Cynthia Gornbein, anticipate withdrawing the two-level captain enhancement for Nixon Rivera Flores at sentencing. Because Nixon Flores, Jesus Ortiz and Tonni Hurtado all lodged the same objection under USSG § 3B1.2., the

United States will respond to them jointly.

## II. THE DEFENDNATS DO NOT MERIT THE MINOR ROLE REDUCTION

### A. Legal Framework

The proponent of a downward adjustment bears the burden of establishing that he merits the adjustment by a preponderance of the evidence. *United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999). As set forth below, the legal framework concerning mitigating role is found in (1) the U.S. Sentencing Guidelines; (2) *United States v. De Varon* and its progeny; and (3) case law applying the mitigating role analysis in maritime interdiction cases similar to the instant case.

#### 1. <u>Sentencing Guidelines</u>

Under the Sentencing Guidelines, a defendant may receive an offense-level reduction for having a limited role in the offense. USSG § 3B1.2, ranging from a four-level reduction for being a minimal participant, a two-level reduction for being a minor participant, or a three-level reduction if his conduct falls somewhere in between. *Id.* The adjustment applies to defendants who are "substantially less culpable than the average participant in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A). In particular, the two-level "minor role" reduction applies to a defendant "who is less culpable than most other participants in the criminal activity." *Id.* § 3B1.2 cmt. n.5. The commentary to

USSG § 3B1.2 explains that determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality-of-the-circumstances analysis. *Id.* § 3B1.2 cmt. n.3(C). The commentary provides the following non-exhaustive list of factors for consideration:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

### 2. *De Varon* Framework

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *De Varon*, 175 F.3d at 934, 940. Second, where the record evidence is sufficient, the district court may also compare the defendant's conduct to that of other participants in the criminal scheme attributed to the defendant. *Id.* at 934, 944.

Concerning the first prong in the *De Varon* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct *attributed to her*." *Id.* at 941 (emphasis in original). "Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways." *Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

As for the second prong of the *De Varon* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *Id.* at 944. Instead, "the district court must determine that the defendant was less culpable than *most other participants* in her relevant conduct." *Id.* (emphasis in original). In *De Varon*, the Eleventh Circuit described a helpful example in which three individuals enter a bank intending to rob it. *Id.* (citing *United States v. Daughtrey*, 874 F.2d 213, 216 (4th

Cir. 1989)). In the example, one defendant stands guard at the bank entrance, another sprays paint on the security camera, and the third gathers money from the teller's cage. *Id.* The court explained that even if one of the participants deserved an aggravating role enhancement, the other participants would not be entitled to a mitigating role reduction. *Id.*; *see also id.* (citing *United States v. Rotolo*, 950 F.2d 70, 71 (1st Cir. 1991)) (recognizing that "one who, say, points a gun at a bank teller and seizes the money is not entitled to a *downward* adjustment simply because someone else in the gang supervised his activities").

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug-courier context, including the amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *De Varon*, 175 F.3d at 945.

### 3. Application in Maritime Interdiction Cases

The Eleventh Circuit has recently applied the *De Varon* analysis to a maritime-interdiction conspiracy case and it upheld the district court's decision denying a mitigating role reduction for a crewmember. In *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir.

Oct. 20, 2016), the defendant faced the same two charges as the defendants in this case. The district court in the *Herrera-Villarreal* case sentenced the defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Court further emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.* And the court pointed out that the defendant had presented no evidence demonstrating that he was less culpable than the other crewmembers on the vessel. *Id.*

**B.    Analysis**

Here, all defendants fail to meet their burden that they are entitled to a minor role reduction on either of the two *De Varon* prongs.

1.    First Prong of *De Varon* Analysis

The first prong in the *De Varon* analysis involves evaluating each of their respective roles in the conduct for which they are being held accountable. *De Varon*, 175 F.3d at 934, 940. The object of the conspiracy to which they pleaded guilty, and for which the PSR holds them accountable, involved the transport of hundreds of kilograms of cocaine across international waters.

Several of the *De Varon* and USSG § 3B1.2 factors weigh against finding that they played a minor role in this conspiracy. According to the DEA lab's weight extrapolation, they each helped transport approximately 1467 kilograms of cocaine. The case agent conservatively estimates that this quantity of cocaine is valued at approximately $18 to $25 million dollars. The amount of drugs and their worth show that the trip organizer placed a high level of trust in each of them. In fact, post *Miranda,* Nixon Flores admitted that: 1) he was going to be paid $15,000 in U.S. currency to transport the cocaine; 2) that he was paid $3,000 in U.S. currency up front, and 3) that approximately one hour into their trip, they met with another GVF which provided them with the cocaine, and Flores with a GPS and coordinates of their final destination.

Like Flores, Tonni Hurtado and Meza Ortiz admitted to receiving similar amounts to engage in the smuggling trip. Hurtado admitted that he was going to be paid $15,000 in U.S. currency to smuggle cocaine and that he received $3,000 in U.S. currency up front, while Meza Ortiz admitted to being offered $10,000 in U.S. currency to participate in the smuggling trip and to receiving approximately $5,350 in Colombian Pesos up front. Meza Ortiz also admitted to being the "load guard" and described his job on the vessel as a lookout, who was searching for other boats and planes nearby.

The similar payment amount and arrangement signify that all of the defendants had a similar purpose and importance to the individuals that hired them. This is particularly noteworthy with regards to Tonni Hurtado, who also admitted to having engaged in two prior drug smuggling trips. The first, after he turned 18 years old, and lead to his detention for four months in Ecuador, and the second, that occurred three months prior to this attempt, and was successful. He further admitted that he was promised $30,000 in U.S. currency for that trip, but was only paid $5,000. Contrary to Hurtado's claims, individuals repeatedly sought his services, and repeatedly payed him to smuggle narcotics. This signifies that Hurtado was an important, necessary, and integral part of countless smuggling trips. This level of participation cannot be considered minor.

In regards to Flores, although he may not have been the sole navigator, or the captain of the vessel, it is uncontroverted that he was the one who was provided the GPS device, and the coordinates to the final destination. It is hard to imagine a more important role in a GFV that is in the middle of the ocean then the person that decides which way to go.

Although the conspiracy involving the defendants may be part of a larger criminal enterprise, they are not being held accountable for the actions of any such larger enterprise. Thus, they cannot rely on any larger criminal

enterprise to define their roles. *De Varon*, 175 F.3d at 941, 947 (explaining that the court should evaluate the defendant's role based on the conspiracy for which he is held accountable, and rejecting the contention that the court should evaluate the defendant's role based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor").

Finally, as in the *Herrera-Villareal* case, here their offense level is calculated using only the amount of drugs recovered on the vessel and on the jettisoned field. Thus, each of their respective "actual conduct [is] identical to the relevant conduct attributable to [them]." *Herrera-Villarreal*, 2016 WL 6123493, at *2. Accordingly, because they did not play a minor role compared to their relevant conduct, they cannot carry their burden on the first prong of the *De Varon* analysis.

### 2. Second Prong of the *De Varon* Analysis

Even if they could satisfy their burden on the first prong of the *De Varon* analysis, they nevertheless fails to do so on the second prong. This prong involves comparing each of their role in the conspiracy to that of other participants in the criminal scheme attributed to them. *De Varon*, 175 F.3d at 934, 944. As discussed above, the conspiracy for which they are being held accountable consisted of three men on a boat transporting approximately 1467

kilograms of cocaine across international waters. Just because other people may merit an offense-level enhancement for their roles does not mean that they merits a mitigating role reduction. *See De Varon*, 175 F.3d at 944.

The crux of the analysis is whether they are "substantially less culpable than the average participant" in the conspiracy. USSG § 3B1.2 cmt. n.3(A). Put another way, the issue is whether they are "less culpable than *most other participants*" in the conspiracy. *De Varon*, 175 F.3d at 944 (emphasis in original); USSG § 3B1.2 cmt. n.5. Here, the average participant in the conspiracy for which they are each being held accountable is a member of the three-man crew on the boat transporting cocaine. Because they were mariners, and in Flores's case, possibly even a captain, they are not "substantially less culpable than the average participant."

### III. CONCLUSION

For the reasons set forth above, the Court should deny defendants Nixon Flores, Jesus Ortiz and Tonni Hurtado's objection seeking a mitigating role reduction and the additional objections flowing from that reduction.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: */s/ Diego F. Novaes*
Diego F. Novaes
Assistant United States Attorney
Florida Bar No. 0107376
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6125
E-mail: diego.novaes@usdoj.gov

**U.S. v. Nixon Bolivar Rivera Flores, et al    Case No. 8:18-cr-20-T-33MAP**

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Tamara Theiss, Esq.
    Mark Ciaravella, Esq.
    Angelo Ferlita, Esq.

                                           */s/ Diego F. Novaes*
                                           Diego F. Novaes
                                           Assistant United States Attorney
                                           Florida Bar No. 0107376
                                           400 North Tampa Street, Suite 3200
                                           Tampa, Florida 33602
                                           Telephone:  (813) 274-6000
                                           Facsimile:   (813) 274-6125
                                           E-mail:  diego.novaes@usdoj.gov

*T:\_Cases\Criminal Cases\F\Flores, Nixon Bolivar Rivera_2018R00093_DFN\p_Sentencing Memo.docx*